[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 9, 2006
THOMAS K. KAHN
CLERK

No. 05-14020
Non-Argument Calendar

_____

D. C. Docket No. 05-00011-CR-T-26-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERESA SULLIVAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 9, 2006)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Teresa Sullivan pleaded guilty to filing a false individual income tax return

in violation of 26 U.S.C. § 7206(1) and causing false income tax returns to be filed

on behalf of other individuals in violation of 18 U.S.C. §§ 2 and 287. The week before her sentencing, Sullivan filed a motion to withdraw her guilty plea. The district court denied the motion after a full evidentiary hearing and sentenced Sullivan to 46 months' imprisonment.

On appeal, Sullivan argues that the district court erred by not allowing her to withdraw her plea because it was not knowing and voluntary. She also argues that the district court improperly applied a role enhancement at sentencing by considering the number of participants involved in the whole tax fraud scheme instead of the number of participants involved in each count of the indictment. We affirm.

## I.

Sullivan contends that her plea was not entered knowingly and voluntarily because she believed that the government's agreement not to indict her daughters if she pleaded guilty was actually a threat that her daughters would be indicted if she did not plead guilty. Therefore, she argues that the district court erred when it denied her motion to withdraw her plea.

At the plea hearing, the district court asked Sullivan whether she had received any inducement to plead guilty other than the fact that the government agreed that her two daughters would not be charged. Sullivan indicated that this

2

was the only inducement or promise that had been made in exchange for her guilty plea. The court also specifically asked whether anyone had threatened Sullivan or her family in any way. Sullivan indicated that no threats had been made and that she was pleading guilty because it was what she wanted to do and not for any other purpose.

After Sullivan indicated that she wished to withdraw her guilty plea, the district court held an evidentiary hearing. The only evidence Sullivan presented that her plea was not knowing and voluntary was her own testimony that she felt that the government had threatened to arrest her daughters if she did not plead guilty. The district court found that Sullivan had "contrived" this theory after she saw her presentence investigation report and realized that she would be facing imprisonment.

Federal Rule of Criminal Procedure 11 provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . .the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). When deciding whether to grant a motion to withdraw a guilty plea, "the district court may consider the totality of the circumstances surrounding the plea . . . includ[ing] (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3)

3

whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." United States v. Buckles, 843 F.2d 469, 471–72 (11th Cir. 1988) (internal citations omitted).

We review the denial of a motion to withdraw a guilty plea for an abuse of discretion, United States v. McCarty, 99 F.3d 383, 385 (11th Cir. 1996), but "[t]he good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw] are issues for the trial court to decide." Buckles, 843 F.2d at 472.

The district court did not abuse its discretion in denying Sullivan's motion to withdraw her plea. Sullivan does not challenge that she had the close assistance of counsel at the plea hearing. The district court found that judicial resources would be conserved by denying Sullivan's motion because the court had been ready to try the case at the time of the plea hearing. The district court credited the government's statements that it would be prejudiced if Sullivan's motion was granted because it would again have to round up witnesses who were difficult to locate. Sullivan did not present any evidence or testimony at the hearing that would contradict the district court's findings.

With respect to Sullivan's contention that the plea was not entered knowingly and voluntarily, the district court specifically found that Sullivan's

testimony regarding her belief that she was being threatened was contrived and not credible. The credibility and good faith of Sullivan's assertions supporting her motion to withdraw is an issue for the district court to decide. We will not overturn its findings on that issue, particularly when Sullivan presented no other evidence to support her claim. Accordingly, the district court did not abuse its discretion when it denied Sullivan's motion to withdraw her guilty plea. We affirm her convictions.

## II.

Sullivan also appeals the district court's application of an enhancement for Sullivan's role in the offense. The district court applied a four level enhancement pursuant to United States Sentencing Guidelines § 3B1.1(a) because Sullivan was the leader of a criminal activity that involved five or more participants. Sullivan argues that the enhancement was improper because it was based on separate offenses charged in separate counts of the indictment and that no singular offense involved the requisite number of participants. We review the district court's determination of a defendant's role in the offense for clear error. United States v. DeVaron, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

Section 3B1.1(a) provides a four level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants

5

or was otherwise extensive." U.S.S.G. § 3B1.1(a) (Nov. 2004). The commentary to § 3B1.1 states that the defendant's role in the offense should be determined on the basis of all relevant conduct within the scope of § 1B1.3. U.S.S.G. ch. 3, pt. B, introductory cmt. According to § 1B1.3(a)(2), relevant conduct includes all acts that are part of the "same course of conduct or common scheme or plan as the offense of conviction" if the offense is of a character for which § 3D1.2(d) would require grouping of multiple counts. U.S.S.G. § 1B1.3(a)(2). Sullivan's tax offenses, which are covered by guidelines § 2T1.1, are explicitly listed as offenses to which § 3D1.2(d). U.S.S.G. § 3D1.2(d) applies.

The commentary to § 1B1.3 provides further support for considering Sullivan's entire scheme for purposes of sentencing:

> Subsection (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity, than with respect to other offenses such as assault, robbery and burglary. . . .

> In addition, the distinctions that the law makes as to what constitutes separate counts or offenses often turn on technical elements that are not especially meaningful for purposes of sentencing. Thus, in a mail fraud case, the scheme is an element of the offense and each mailing may be the basis for a separate count; in an embezzlement case, each taking may provide a basis for a separate count. Another consideration is that in a pattern of small thefts, for example, it is important to take into account the full range of related conduct. Relying on the entire range of conduct, regardless of the number of counts that are

6

alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses.

U.S.S.G. § 1B1.3 cmt. background.

Sullivan was the leader and organizer of a scheme to file multiple false income tax returns. She prepared fictitious W-2 forms and fabricated false dependents for eleven other taxpayers. She frequently drove the individuals to different tax return preparers so that her scheme would not be detected. Sullivan's scheme is precisely the type that should be considered collectively as relevant conduct under § 1B1.3. Therefore, the district court did not err in considering all of the participants for the purposes of applying a § 3B1.1(a) role enhancement, regardless of the fact that each participant was the subject of a separate count.

**AFFIRMED.**